JASON R. HULL [11202]
JHULL@MOHTRIAL.COM
**MARSHALL OLSON & HULL, PC**
TEN EXCHANGE PLACE, SUITE 350
SALT LAKE CITY, UTAH 84111
TELEPHONE: 801.456.7655

TYLER J. BEAN
(*PRO HAC VICE* APPLICATION FORTHCOMING)
KENNEDY M. BRIAN
(*PRO HAC VICE* APPLICATION FORTHCOMING)
**SIRI & GLIMSTAD LLP**
101 PARK AVENUE
SUITE 1300, # 16982799
OKLAHOMA CITY, OK 73102
TEL: (212) 532-1091
E: TBEAN@SIRILLP.COM
E:KBRIAN@SIRILLP.COM

***Attorneys for Plaintiff and
the Proposed Class***

---

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF UTAH

| | |
|---|---|
| **CHEYENNE VERBISH,** individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> **INSTRUCTURE, INC.,** <br><br> Defendant. | **COMPLAINT** <br> **[PROPOSED CLASS ACTION]** <br><br> **JURY TRIAL DEMANDED** <br><br><br> Case No. 2:26-cv-394 |

Plaintiff Cheyenne Verbish ("Plaintiff"), individually and on behalf of all similarly situated

persons (the "Class" or "Class Members" (as further defined below)), alleges the following against

Defendant Instructure, Inc. ("Defendant") on information and belief derived from, among other

things, investigation by Plaintiff's counsel and review of public documents as to all other matters:

1

## I.    INTRODUCTION

1.    Plaintiff brings this class action against Defendant, upon information and belief, for its failure to properly secure and safeguard Plaintiff's and Class Members' personally identifiable information ("PII"), resulting in a devastating data breach impacting *millions* of students nationwide in or around May 2026 (the "Data Breach" or "Breach").[1]

2.    Canvas is a web-based learning management system platform developed by Defendant.[2] Canvas is used by over 8,000 universities and K-12 schools for course websites, assignments, and communication.[3]

3.    On May 1, 2026, Defendant disclosed that Canvas had experienced a "cybersecurity incident perpetrated by a criminal threat actor."[4]

4.    As a result, Canvas was shut down for several hours on May 7, 2026.[5]

5.    Shortly after the Breach, a hacking group known as "ShinyHunters" claimed responsibility for the Data Breach and claimed it had accessed data from more than 275 million people across nearly 9,000 schools.[6]

6.    As such, it is evident that highly sensitive personally identifiable education records ("Sensitive Information") were exposed to criminal hackers by virtue of the Data Breach. Due to ShinyHunter's involvement in the Data Breach, and the nature of the platform that was infiltrated, the exposed Sensitive Information could include everything from students' Social Security numbers to their names, grades, education history, learning disabilities, financial aid information,

---

[1] https://www.nytimes.com/2026/05/07/education/canvas-hacked-down-data-breach.html.
[2]    https://www.wral.com/news/education/canvas-shinyhunters-ransom-instructure-hack-data-breach-may-2026/.
[3] https://www.nytimes.com/2026/05/07/education/canvas-hacked-down-data-breach.html.
[4] *Id.*
[5] *Id.*
[6] *Id.*

student ID numbers, email addresses, contact information, and much more.

7.      It is easy to understand why students highly value the confidentiality of their education records, particularly where it comes to their financial aid needs, grades and GPAs. As such, it is not surprising that both state and federal law have long required that educational institutions must protect the confidentiality of their students' information, including through the Federal Educational Rights and Privacy Act ("FERPA"), 20 U.S.C. § 1232g, *et seq.*, which prohibits any regulated entity from disclosing personally identifiable education records to an unauthorized third party.

8.      As a result of Defendant's conduct, Plaintiff and Class Members have suffered numerous injuries, including: (i) invasion of privacy; (ii) lack of trust in communicating with educational providers; (iii) emotional distress and heightened concerns related to the release of Sensitive Information to a criminal ransomware group; (iv) loss of benefit of the bargain; (v) diminution of value of the Sensitive Information; (vi) statutory damages and (vii) continued and ongoing risk to their Sensitive Information.

9.      Upon information and belief, Defendant has not yet provided individual notice of the Data Breach to all victims of the Data Breach. Thus, most, if not all Class Members do not know that their Sensitive Information has been compromised, and that they are, and continue to be, at significant risk of identity theft and various other forms of personal, social, and financial harm.

10.      Upon information and belief, the Sensitive Information compromised in the Data Breach contained highly sensitive student data, representing a gold mine for data thieves. As such, the risk of identity theft and fraud will remain for Plaintiff's and Class Members' respective lifetimes.

11.     Upon information and belief, there has been no assurance offered by Defendant that all personal data or copies of data have been recovered or destroyed, or that Defendant has adequately enhanced its data security practices sufficiently to avoid a similar breach of its network in the future.

12.     Therefore, Plaintiff and Class Members have suffered and are at an imminent, immediate, and continuing increased risk of suffering, ascertainable losses in the form of harm from identity theft and other fraudulent misuse of their Sensitive Information, the loss of the benefit of their bargain, and potential out-of-pocket expenses to remedy or mitigate the effects of the Data Breach.

13.     Upon information and belief, the potential for improper disclosure and theft of Plaintiff's and Class Members' Sensitive Information was a known risk to Defendant, and thus Defendant was on notice that failing to take necessary steps to secure the Sensitive Information left it vulnerable to an attack such as this.

14.     Upon information and belief, Defendant failed to properly monitor and properly implement data security practices with regard to the computer network and systems that housed the Sensitive Information. Had Defendant properly monitored its networks, it would have discovered the Breach sooner.

15.     Plaintiff's and Class Members' identities are now at risk because of Defendant's negligent conduct. The Sensitive Information that Defendant collected and maintained is now in the hands of data thieves and other unauthorized third parties.

## II.    PARTIES

4

16.     Plaintiff **Cheyenne Verbish** is, and at all times mentioned herein was, an individual citizen of Santa Rosa, CA.

17.     Defendant **Instructure, Inc.** is a Delaware corporation with its principal place of business located at 6330 South 3000 East, Suite 700, Salt Lake City, UT, 84121.

### III.     JURISDICTION AND VENUE

18.     This Court has jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million, exclusive of interest and costs. The number of class members is more than 100 and at least one member of the Class defined below is a citizen of a different state that is diverse from Defendant's citizenship. Thus, minimal diversity exists under 28 U.S.C. § 1332 (d)(2)(A).

19.     Defendant has its principal place of business located in this District.

20.     This Court has personal jurisdiction over Defendant because Defendant is registered to do business and maintains its principal place of business in this District.

21.     Venue is proper in this Court because Defendant's principal place of business is located in this District, and because a substantial part of the events, acts, and omissions giving rise to Plaintiff's claims occurred in this District.

### IV.     FACTUAL ALLEGATIONS

**A.** *Defendant's Business and Collection of Plaintiff's and Class Members' Sensitive Information.*

22.     Defendant owns and operates Canvas, a learning management platform used by thousands of universities and schools.[7]

---

[7] https://www.abc10.com/article/news/nation-world/canvas-hack-shinyhunters-schools-students-teachers-data-exposed/507-0f3f5973-3d68-45af-b309-666561b2bd87.

23.     Plaintiff and Class Members were required to provide their Sensitive Information to Defendant, either directly or indirectly to Defendant in the course of receiving education.

24.     Due to the highly personal nature of the Sensitive Information Defendant acquires and stores, Defendant, upon information and belief, promised to, among other things: (i) keep students' Sensitive Information private; (ii) comply with industry standards related to data security and the maintenance of students' Sensitive Information; (iii) inform students of its legal duties relating to data security and comply with all federal and state laws protecting students' Sensitive Information; (iv) only use and release students' Sensitive Information for reasons that relate to the services it provides; and (v) provide adequate notice to students if their Sensitive Information is disclosed without authorization.

25.     By obtaining, collecting, using, and deriving a benefit from Plaintiff's and Class Members' Sensitive Information, Defendant assumed legal and equitable duties it owed to them and knew or should have known that it was responsible for protecting Plaintiff's and Class Members' Sensitive Information from unauthorized access and exfiltration.

26.     Plaintiff and Class Members relied on Defendant to keep their Sensitive Information confidential and securely maintained and to only make authorized disclosures of this Information, which Defendant ultimately failed to do.

**B.  *The Data Breach and Defendant's Inadequate Notice to Plaintiff and Class Members.***

27.     On May 1, Defendant stated it had "experienced a cybersecurity incident perpetrated by a criminal threat actor."[8] Defendant claimed the Breach had been "contained" the next day but that usernames, email addresses, student ID numbers and communications from some

---

[8] https://www.cnn.com/2026/05/07/us/canvas-hack-strands-college-students-finals-week.

institutions appeared to have been exposed.[9]

28.     Shortly after the Breach, ShinyHunters claimed responsibility for the Data Breach.[10]

29.     Specifically, ShinyHunters claimed in a ransom note on May 3, 2026, that it breached 275 million individuals' data and had access to "several billions of private messages," giving a May 6, 2026 deadline for Instructure to reach out.[11]

30.     What is particularly concerning is the exposure of private messages—communications exchanged between students and teachers—which raises serious privacy and safety concerns, particularly given the large number of minors potentially affected.[12]

31.     This Data Brach "is not an isolated case but part of a broader pattern of aggressive cyber activity attributed to ShinyHunters. In 2025, the group reportedly carried out a massive breach involving Salesforce servers, exfiltrating over 1.5 billion records linked to approximately 760 organizations. Such operations highlight the group's capability to compromise even well-established technology providers with extensive security infrastructures."[13]

32.     Defendant had obligations created by contract, industry standards, common law, and representations made to Plaintiff and Class Members to keep Plaintiff's and Class Members' Sensitive Information confidential and to protect it from unauthorized access and disclosure.

33.     Plaintiff and Class Members provided their Sensitive Information to Defendant, either directly or indirectly, with the reasonable expectation and mutual understanding that

---

[9] *Id.*

[10] *Id.*

[11] *Id.*

[12]     https://www.cybersecurity-insiders.com/instructure-data-breach-by-shinyhunters-puts-students-and-teachers-to-cyber-risks/.

[13] *Id.*

Defendant would comply with its obligations to keep such Information confidential and secure from unauthorized access and to provide timely notice of any security breaches.

34.    Defendant's data security obligations were particularly important given the substantial increase in cyberattacks in the education sector in recent years.

35.    Defendant knew or should have known that its electronic records would be targeted by cybercriminals.

### C.  *The Education Sector is Particularly Susceptible to Data Breaches.*

36.    Defendant was on notice that the education sector has long been a routine target for data breaches.

37.    Education related breaches have continued to rapidly increase because electronic student data is seen as a valuable asset.

38.    "Recent intelligence confirms that schools and universities now face more cyberattacks than any other sector. And this isn't by accident. Attackers have made a strategic choice, viewing educational institutions as 'target rich, cyber poor' a term used by CISA's K–12 Cybersecurity Initiative to describe organizations that hold vast amounts of sensitive data but often lack the resources for robust protection."[14]

39.    "In the second quarter of 2025, the education sector endured an average of 4,388 cyberattacks per organization every week."[15]

40.    "A breach can violate privacy laws like the Family Educational Rights and Privacy Act (FERPA), leading to identity theft for minors and lasting financial and emotional harm for

---

[14] https://deepstrike.io/blog/data-breaches-education-2025.
[15] *Id.*

families. In short, educational institutions are under siege, and protecting student and staff data has never been more critical."[16]

41.    As an entity in the education sector, Defendant knew, or should have known, the importance of safeguarding students' Sensitive Information and of the foreseeable consequences if such Sensitive Information were to be disclosed. Defendant failed, however, to take adequate cybersecurity measures to prevent the Data Breach from occurring.

### D. *Defendant Failed to Comply with FERPA.*

42.    FERPA, 20 U.S.C. § 1232g, *et seq*. and its implementing regulations govern the release of and access to "education records." *See* 20 U.S.C. § 1232(g); 34 C.F.R. Part 99.

43.    Under FERPA, "education records" are "those records, files, documents, and other materials which—(i) contain information directly related to a student; and (ii) are maintained by an educational agency or institution or by a person acting for such agency or institution." 20 U.S.C. § 1232g(a)(4)(A).

44.    The term "student" includes "any person with respect to whom an educational agency or institution maintains education records or personally identifiable information, but does not include a person who has not been in attendance at such agency or institution." 20 U.S.C. § 1232(g)(a)(6).

45.    Education records "include but are not limited to grades, transcripts, class lists, student course schedules, health records (at the K-12 level), student financial information (at the postsecondary level), and student discipline files."[17]

---

[16] *Id.*
[17] *What is an education record?*, UNITED STATES DEPARTMENT OF EDUCATION, https://studentprivacy.ed.gov/faq/what-education-record.

46.    Under the regulations implementing FERPA, "personally identifiable information" includes, but is not limited to: (i) the student's name; (ii) the name of the student's parent or other family members; (iii) the address of the student or student's family; (iv) a personal identifier, such as the student's social security number, student number, or biometric record; (v) other indirect identifiers such as the student's date of birth, place of birth, and mother's maiden name; (vi) other information that, alone or in combination, is linked or linkable to a specific student that would allow a reasonable person in a school community who does not have personal knowledge of the relevant circumstances, to identify the student with reasonable certainty; and (vii) information requested by a person who the educational agency or institution reasonably believes knows the identity of the student to whom the educational record relates." 34 C.F.R. 99.3.

47.    Under FERPA, an educational institution or agency may not disclose personally identifiable information from a student's education records without signed and dated written consent, subject to certain exceptions. *See* 34 C.F.R. 99.30-31.

48.    The information allegedly disclosed through the Breach, upon information and belief, included, *inter alia*, Plaintiff's and Class Members' cumulative GPAs, course enrollment, and financial aid status. These details and others are education records regulated by FERPA.

49.    Although FERPA applies to educational institutions and agencies that receive federal funding from the U.S. Department of Education, neither of which apply to Defendant under these circumstances, FERPA establishes an industry standard of care regarding data collection and protection that should have been observed by Defendant but was not.

## E.  *Defendant Failed to Comply with FTC Guidelines.*

50.    The Federal Trade Commission ("FTC") has promulgated numerous guides for businesses which highlight the importance of implementing reasonable data security practices.

According to the FTC, the need for data security should be factored into all business decision making. Indeed, the FTC has concluded that a company's failure to maintain reasonable and appropriate data security for consumers' sensitive personal information is an "unfair practice" in violation of Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. *See, e.g.*, *FTC v. Wyndham Worldwide Corp.*, 799 F.3d 236 (3d Cir. 2015).

51.     In October 2016, the FTC updated its publication, *Protecting Personal Information: A Guide for Business*, which established cybersecurity guidelines for businesses.[18] . The guidelines note that businesses should protect the personal customer information that they keep, properly dispose of personal information that is no longer needed, encrypt information stored on computer networks, understand their network's vulnerabilities, and implement policies to correct any security problems. The guidelines also recommend that businesses use an intrusion detection system to expose a breach as soon as it occurs, monitor all incoming traffic for activity indicating someone is attempting to hack into the system, watch for large amounts of data being transmitted from the system, and have a response plan ready in the event of a breach.

52.     The FTC further recommends that companies not maintain personally identifiable information longer than is needed for authorization of a transaction, limit access to sensitive data, require complex passwords to be used on networks, use industry-tested methods for security, monitor the network for suspicious activity, and verify that third-party service providers have implemented reasonable security measures.

53.     The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect customer data by treating the failure to employ reasonable and

---

[18] *Protecting Personal Information: A Guide for Business,* FEDERAL TRADE COMMISSION (Oct. 2016), available at: https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf.

appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45 *et seq*. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

54.     Section 5 of the FTC Act, 15 U.S.C. § 45, prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses like Defendant of failing to use reasonable measures to protect Sensitive Information they collect and maintain from consumers.  The FTC publications and orders described above also form part of the basis of Defendant's duty in this regard.

55.     The FTC has also recognized that personal data is a new and valuable form of currency. In an FTC roundtable presentation, former Commissioner Pamela Jones Harbour stated that "most consumers cannot begin to comprehend the types and amount of information collected by businesses, or why their information may be commercially valuable. Data is currency. The larger the data set, the greater potential for analysis and profit."[19]

56.     As evidenced by the Data Breach, Defendant failed to properly implement basic data security practices. Defendant's failure to employ reasonable and appropriate measures to protect against unauthorized access to Plaintiff's and Class Members' Sensitive Information constitutes an unfair act or practice prohibited by Section 5 of the FTCA.

57.     Defendant was at all times fully aware of its obligation to protect the Sensitive Information of its students yet failed to comply with such obligations. Defendant was also aware of the significant repercussions that would result from its failure to do so.

---

[19] Pamela Jones Harbour, *Remarks Before FTC Exploring Privacy Roundtable* (Dec. 7, 2009), available at: https://www.ftc.gov/sites/default/files/documents/public_statements/remarks-ftc-exploring-privacy-roundtable/091207privacyroundtable.pdf.

**F.  *Defendant Failed to Comply with Industry Standards.***

58.    As noted above, the education sector is routinely identified as being particularly vulnerable to cyberattacks because of the value of the Sensitive Information which they collect and maintain.

59.    The Center for Internet Security's ("CIS") Critical Security Controls ("CSC") recommends certain best practices to adequately secure data and prevent cybersecurity attacks, including Critical Security Controls of Inventory and Control of Enterprise Assets, Inventory and Control of Software Assets, Data Protection, Secure Configuration of Enterprise Assets and Software, Account Management, Access Control Management, Continuous Vulnerability Management, Audit Log Management, Email and Web Browser Protections, Malware Defenses, Data Recovery, Network Infrastructure Management, Network Monitoring and Defense, Security Awareness and Skills Training, Service Provider Management, Application Software Security, Incident Response Management, and Penetration Testing.[20]

60.    The National Institute of Standards and Technology ("NIST") also recommends certain practices to safeguard systems, such as the following:

    a.  Control who logs on to your network and uses your computers and other devices.
    b.  Use security software to protect data.
    c.  Encrypt sensitive data, at rest and in transit.
    d.  Conduct regular backups of data.
    e.  Update security software regularly, automating those updates if possible.
    f.  Have formal policies for safely disposing of electronic files and old devices.
    g.  Train everyone who uses your computers, devices, and network about cybersecurity. You can help employees understand their personal risk in addition to their crucial role in the workplace.

---

[20]  *The 18 CIS Critical Security Controls*, CENTER FOR INTERNET SECURITY, https://www.cisecurity.org/controls/cis-controls-list.

61.     Further still, the United States Cybersecurity and Infrastructure Security Agency ("CISA") makes specific recommendations to organizations to guard against cybersecurity attacks, including (a) reducing the likelihood of a damaging cyber intrusion by validating that "remote access to the organization's network and privileged or administrative access requires multi-factor authentication, [e]nsur[ing] that software is up to date, prioritizing updates that address known exploited vulnerabilities identified by CISA[,] [c]onfirm[ing] that the organization's IT personnel have disabled all ports and protocols that are not essential for business purposes," and other steps; (b) taking steps to quickly detect a potential intrusion, including "[e]nsur[ing] that cybersecurity/IT personnel are focused on identifying and quickly assessing any unexpected or unusual network behavior [and] [e]nabl[ing] logging in order to better investigate issues or events[;] [c]onfirm[ing] that the organization's entire network is protected by antivirus/antimalware software and that signatures in these tools are updated," and (c) "[e]nsur[ing] that the organization is prepared to respond if an intrusion occurs," and other steps.[21]

62.     Upon information and belief, Defendant failed to implement industry standard cybersecurity measures, including by failing to meet the minimum standards of both the NIST Cybersecurity Framework Version 2.0 (including PR.AA-01, PR.AA.-02, PR.AA-03, PR.AA-04, PR.AA-05, PR.AT-01, PR.DS-01, PR-DS-02, PR.DS-10, PR.PS-01, PR.PS-02, PR.PS-05, PR.IR-01, DE.CM-01, DE.CM-03, DE.CM-06, DE.CM-09, and RS.CO-04) and the Center for Internet Security's Critical Security Controls (CIS CSC), which are established frameworks for reasonable cybersecurity readiness, and by failing to comply with other industry standards for protecting

---

[21] *Shields Up: Guidance for Organizations*, CYBERSECURITY AND INFRASTRUCTURE SECURITY AGENCY, https://www.cisa.gov/shields-guidance-organizations.

Plaintiff's and Class Members' Sensitive Information, resulting in the Data Breach.

**G.** *Defendant Breached its Duty to Safeguard Plaintiff's and Class Members' Sensitive Information.*

63.     In addition to its obligations under federal and state laws, Defendant owed a duty to Plaintiff and Class Members to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting the Sensitive Information in its possession from being compromised, lost, stolen, accessed, and misused by unauthorized persons. Defendant owed a duty to Plaintiff and Class Members to provide reasonable security, including consistency with industry standards and requirements, and to ensure that its computer systems, networks, and protocols adequately protected the Sensitive Information of Class Members

64.     Upon information and belief, Defendant breached its obligations to Plaintiff and Class Members and/or was otherwise negligent and reckless because it failed to properly maintain and safeguard its computer systems and data. Defendant's unlawful conduct includes, but is not limited to, the following acts and/or omissions:

      a.    Failing to maintain an adequate data security system that would reduce the risk of data breaches and cyberattacks;

      b.    Failing to adequately protect students' Sensitive Information;

      c.    Failing to properly monitor its own data security systems for existing intrusions;

      d.    Failing to sufficiently train its employees regarding the proper handling of its students Sensitive Information;

      e.    Failing to fully comply with FTC guidelines for cybersecurity in violation of the FTCA;

f.   Failing to adhere to FERPA and industry standards for cybersecurity as discussed above; and/or

g.   Otherwise breaching its duties and obligations to protect Plaintiff's and Class Members' Sensitive Information.

65.   Upon information and belief, Defendant negligently and unlawfully failed to safeguard Plaintiff's and Class Members' Sensitive Information by allowing cyberthieves to access its computer network and systems which contained unsecured and unencrypted Sensitive Information.

66.   Upon information and belief, had Defendant remedied the deficiencies in its information storage and security systems, followed industry guidelines, and adopted security measures recommended by experts in the field, it could have prevented intrusion into its information storage and security systems and, ultimately, the theft of Plaintiff's and Class Members' confidential Sensitive Information.

67.   Accordingly, Plaintiff's and Class Members' lives were severely disrupted. What's more, they have been harmed as a result of the Data Breach and now face an increased risk of future harm that includes, but is not limited to, fraud and identity theft. Plaintiff and Class Members also lost the benefit of the bargain they made with Defendant.

### H.   *Plaintiff and Class Members are at a Significantly Increased and Substantial Risk of Fraud and Identity Theft as a Result of the Data Breach.*

68.   The FTC hosted a workshop to discuss "informational injuries," which are injuries that consumers like Plaintiff and Class Members suffer from privacy and security incidents such

as data breaches or unauthorized disclosure of data.[22] Exposure of highly sensitive personal information that a consumer wishes to keep private may cause harm to the consumer, such as the ability to obtain or keep employment. Consumers' loss of trust in e-commerce also deprives them of the benefits provided by the full range of goods and services available which can have negative impacts on daily life.

69.    Any victim of a data breach is exposed to serious ramifications regardless of the nature of the data that was breached. Indeed, the reason why criminals steal information is to monetize it. They do this by selling the spoils of their cyberattacks on the black market to identity thieves who desire to extort and harass victims or to take over victims' identities in order to engage in illegal financial transactions under the victims' names.

70.    Because a person's identity is akin to a puzzle, the more accurate pieces of data an identity thief obtains about a person, the easier it is for the thief to take on the victim's identity or to otherwise harass or track the victim. For example, armed with just a name and date of birth, a data thief can utilize a hacking technique referred to as "social engineering" to obtain even more information about a victim's identity, such as a person's login credentials or Social Security number. Social engineering is a form of hacking whereby a data thief uses previously acquired information to manipulate individuals into disclosing additional confidential or personal information through means such as spam phone calls and text messages or phishing emails.

71.    In fact, as technology advances, computer programs may scan the Internet with a wider scope to create a mosaic of information that may be used to link compromised information

---

[22] *FTC Information Injury Workshop, BE and BCP Staff Perspective,* Federal Trade Commission, (October 2018), *available at* https://www.ftc.gov/system/files/documents/reports/ftc-informational-injury-workshop-be-bcp-staff-perspective/informational_injury_workshop_staff_report_-_oct_2018_0.pdf.

to an individual in ways that were not previously possible. This is known as the "mosaic effect." Names and dates of birth, combined with contact information like telephone numbers and email addresses, are very valuable to hackers and identity thieves as it allows them to access users' other accounts.

72.    Thus, even if certain information was not purportedly involved in the Data Breach, the unauthorized parties could use Plaintiff's and Class Members' Sensitive Information to access accounts, including, but not limited to, email accounts and financial accounts, to engage in a wide variety of fraudulent activity against Plaintiff and Class Members.

73.    One such example of how malicious actors may compile Sensitive Information is through the development of "Fullz" packages.

74.    Cybercriminals can cross-reference two sources of the Sensitive Information compromised in the Data Breach to marry unregulated data available elsewhere to criminally stolen data with an astonishingly complete scope and degree of accuracy in order to assemble complete dossiers on individuals. These dossiers are known as "Fullz" packages.

75.    The development of "Fullz" packages means that the stolen Sensitive Information from the Data Breach can easily be used to link and identify it to Plaintiff's and the proposed Class's phone numbers, email addresses, and other sources and identifiers. In other words, even if certain information such as emails, phone numbers, or credit card or financial account numbers may not be included in the Sensitive Information stolen in the Data Breach, criminals can easily create a Fullz package and sell it at a higher price to unscrupulous operators and criminals (such as illegal and scam telemarketers) over and over. That is exactly what is happening to Plaintiff and members of the proposed Class, and it is reasonable for any trier of fact, including this Court or a jury, to find that Plaintiff and other Class Members' stolen Sensitive Information is being misused,

18

and that such misuse is fairly traceable to the Data Breach.

76.    For these reasons, the FTC recommends that identity theft victims take several time-consuming steps to protect their personal and financial information after a data breach, including contacting one of the credit bureaus to place a fraud alert on their account (and an extended fraud alert that lasts for 7 years if someone steals the victim's identity), reviewing their credit reports, contacting companies to remove fraudulent charges from their accounts, placing a freeze on their credit, and correcting their credit reports.[23] However, these steps do not guarantee protection from identity theft but can only mitigate identity theft's long-lasting negative impacts.

77.    Identity thieves can also use stolen personal information such as Social Security numbers and Sensitive Information for a variety of crimes, including credit card fraud, phone or utilities fraud, bank fraud, to obtain a driver's license or official identification card in the victim's name but with the thief's picture, to obtain government benefits, or to file a fraudulent tax return using the victim's information. In addition, identity thieves may obtain a job using the victim's Social Security number, rent a house in the victim's name, receive medical services in the victim's name, and even give the victim's personal information to police during an arrest resulting in an arrest warrant being issued in the victim's name.

78.    The Identity Theft Resource Center documents the multitude of harms caused by fraudulent use of PII in its 2023 Consumer Impact Report.[24] After interviewing over 14,000 identity crime victims, researchers found that as a result of the criminal misuse of their PII:

- 77-percent experienced financial-related problems;
- 29-percent experienced financial losses exceeding $10,000;
- 40-percent were unable to pay bills;

[23] *See IdentityTheft.gov,* Federal Trade Commission, https://www.identitytheft.gov/Steps.
[24] *2023 Consumer Impact Report* (Jan. 2024), IDENTITY THEFT RESOURCE CENTER, *available online at*: https://www.idtheftcenter.org/wp-content/uploads/2023/08/ITRC_2023-Consumer-Impact-Report_Final-1.pdf .

- 28-percent were turned down for credit or loans;
- 37-percent became indebted;
- 87-percent experienced feelings of anxiety;
- 67-percent experienced difficulty sleeping; and
- 51-percent suffered from panic of anxiety attacks.[25]

79.    Sensitive Information is also especially valuable to identity thieves. As the FTC recognizes, identity thieves can use Sensitive Information to commit an array of crimes, including identity theft and fraud.[26]

80.    Indeed, a robust cyber black market exists in which criminals openly post stolen Sensitive Information on multiple underground Internet websites, commonly referred to as the dark web.

81.    While credit card information and associated PII can sell for as little as $1–$2 on the black market, protected health information can sell for as much as $363 according to the Infosec Institute.[27]

82.    The ramifications of Defendant's failure to keep its students' Sensitive Information secure are long-lasting and severe. Once it is stolen, fraudulent use of such and damage to victims may continue for years.

83.    Upon information and belief, here, not only was sensitive student education information compromised, but financial information and Social Security numbers were compromised too. The value of both PII and Sensitive Information is axiomatic. The value of "big data" in corporate America is astronomical. The fact that identity thieves attempt to steal identities

---

[25] *Id.* at pp. 21–25.

[26] FTC, *Warning Signs of Identity Theft, available at*: https://consumer.ftc.gov/articles/what-know-about-identity-theft.

[27] *Data Breaches: In the Education Sector,* CENTER FOR INTERNET SECURITY, *available at*: https://www.cisecurity.org/insights/blog/data-breaches-in-the-education-sector.

notwithstanding possible heavy prison sentences illustrates beyond a doubt that the Sensitive Information compromised here has considerable market value.

84.     It must also be noted that there may be a substantial time lag between when harm occurs and when it is discovered, and also between when PII and/or Sensitive Information is stolen and when it is misused. According to the U.S. Government Accountability Office, which conducted a study regarding data breaches:[28]

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.

85.     PII and Sensitive Information are such valuable commodities to identity thieves that once the information has been compromised, criminals often trade the information on the dark web for years.

86.     As a result, Plaintiff and Class Members are at an increased risk of fraud and identity theft for many years into the future. Thus, Plaintiff and Class Members have no choice but to vigilantly monitor their accounts for many years to come.

**I.   *Plaintiff's and Class Members' Damages.***

***Plaintiff's Experience***

87.     Upon information and belief, Defendant acquired and maintained Plaintiff's Sensitive Information as part of its standard business practices and in connection with her school.

---

[28] *Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown*, U.S. GOVERNMENT ACCOUNTABILITY OFFICE (June 2007), available at: https://www.gao.gov/assets/gao-07-737.pdf.

88.   Upon information and belief, Plaintiff's Sensitive Information was subject to the Data Breach.

89.   Plaintiff learned of the Data Breach through her own research.

90.   Plaintiff would not have provided her Sensitive Information to Defendant had Defendant timely disclosed that its systems lacked adequate data security to safeguard Sensitive Information from theft, and that those systems were highly susceptible to a data breach.

91.   Upon information and belief, Plaintiff suffered actual injury in the form of having her Sensitive Information compromised and/or stolen as a result of the Data Breach.

92.   Upon information and belief, Plaintiff suffered actual injury in the form of damages to and diminution in the value of her Sensitive Information—a form of intangible property that Plaintiff entrusted to Defendant for the purpose of receiving services and it was compromised in, and as a result of, the Data Breach.

93.   Upon information and belief, Plaintiff suffered imminent and impending injury arising from the substantially increased risk of future fraud, identity theft, and misuse posed by her Sensitive Information being placed in the hands of criminals.

94.   Plaintiff has a continuing interest in ensuring that her Sensitive Information, which, upon information and belief, remains in the possession of Defendant, is protected and safeguarded from future breaches. This interest is particularly acute, because Defendant's systems have already been shown to be susceptible to compromise and are subject to further attacks so long as Defendant fails to undertake the necessary and appropriate security and training measures to protect students' Sensitive Information

95.   Upon information and belief, Plaintiff also suffered actual injury from having her Sensitive Information compromised as a result of the Data Breach in the form of: (i) damage to

and diminution in the value of her Sensitive Information, a form of property that Defendant obtained from Plaintiff (either directly or indirectly); (ii) violation of her privacy rights; and (iii) present, imminent, and impending injury arising from the increased risk of identity theft, and fraud she now faces.

***Classwide Injuries***

96.     Upon information and belief, Plaintiff and Class Members have been damaged by the compromise of their Sensitive Information in the Data Breach.

97.     Plaintiff and Class Members entrusted their Sensitive Information to Defendant either directly or indirectly in connection with their education.

98.     Upon information and belief, Plaintiff's and Class Members' Sensitive Information was subsequently compromised as a direct and proximate result of the Data Breach, which Data Breach resulted from Defendant's inadequate data security practices.

99.     As a direct and proximate result of Defendant's actions and omissions, Plaintiff and Class Members have been harmed and are at an imminent, immediate, and continuing increased risk of harm, including but not limited to, having medical services billed in their names, loans opened in their names, tax returns filed in their names, utility bills opened in their names, credit card accounts opened in their names, and other forms of identity theft.

100.     Plaintiff and Class Members may incur out-of-pocket costs for protective measures such as credit monitoring fees, credit report fees, credit freeze fees, and similar costs directly or indirectly related to the Data Breach.

101.     Plaintiff and Class Members also face a substantial risk of being targeted in future phishing, data intrusion, and other illegal schemes through the misuse of their Sensitive

Information, since potential fraudsters will likely use such Sensitive Information to carry out such targeted schemes against Plaintiff and Class Members.

102.   The Sensitive Information allegedly maintained by and stolen from Defendant's systems, combined with publicly available information, allows nefarious actors to assemble a detailed mosaic of Plaintiff and Class Members, which can also be used to carry out targeted fraudulent schemes against Plaintiff and Class Members.

103.   Plaintiff and Class Members also lost the benefit of the bargain they made with Defendant. Plaintiff and Class Members overpaid for services that were intended to be accompanied by adequate data security but were not. Indeed, part of the price Plaintiff and Class Members paid to Defendant was intended to be used by Defendant to fund adequate security of Defendant's system and protect Plaintiff's and Class Members' Sensitive Information. Thus, Plaintiff and the Class did not receive the benefit of the bargain.

104.   Upon information and belief, Plaintiff and Class Members also suffered a loss of value of their PII and Sensitive Information when it was acquired by cyber thieves in the Data Breach.

105.   Numerous courts have recognized the propriety of loss of value damages in related cases. An active and robust legitimate marketplace for Sensitive Information also exists. In 2019, the data brokering industry was worth roughly $200 billion.[29] In fact, consumers who agree to provide their web browsing history to the Nielsen Corporation can in turn receive up to $60 a year.[30]

---

[29] *See How Data Brokers Profit from the Data We Create*, THE QUANTUM RECORD, https://thequantumrecord.com/blog/data-brokers-profit-from-our-data/.
[30] *Frequently Asked Questions,* NIELSEN COMPUTER & MOBILE PANEL, https://computermobilepanel.nielsen.com/ui/US/en/faqen.html.

106.    As a result of the Data Breach, Plaintiff's, and Class Members' Sensitive Information, which has an inherent market value in both legitimate and illegal markets, has been harmed and diminished due to its acquisition by cybercriminals. This transfer of valuable information happened with no consideration paid to Plaintiff or Class Members for their property, resulting in an economic loss. Moreover, the Sensitive Information is apparently readily available to others, and the rarity of the Sensitive Information has been destroyed because it is no longer only held by Plaintiff and the Class Members, and because that data no longer necessarily correlates only with activities undertaken by Plaintiff and the Class Members, thereby causing additional loss of value.

107.    Finally, Plaintiff and Class Members have suffered or will suffer actual injury as a direct and proximate result of the Data Breach in the form of out-of-pocket expenses and the value of their time reasonably incurred to remedy or mitigate the effects of the Data Breach.

108.    Moreover, Plaintiff and Class Members have an interest in ensuring that their Sensitive Information, which is believed to still be in the possession of Defendant, is protected from future breaches by the implementation of more adequate data security measures and safeguards, including but not limited to, ensuring that the storage of data or documents containing Sensitive Information of its students is not accessible online, that access to such data is password protected, and that such data is properly encrypted.

109.    As a direct and proximate result of Defendant's actions and inactions, Plaintiff and Class Members have suffered a loss of privacy and have suffered cognizable harm, including an imminent and substantial future risk of harm, in the forms set forth above.

## V.    CLASS ACTION ALLEGATIONS

110.    Plaintiff brings this action individually and on behalf of all other persons similarly situated, pursuant to Federal Rule of Civil Procedure 23.

111.    Specifically, Plaintiff proposes the following Class, subject to amendment as appropriate:

**Class**

All citizens of the United States whose Sensitive Information was accessed and/or acquired as a result of the Data Breach.

112.    Excluded from the Class are Defendant and its parents or subsidiaries, any entities in which it has a controlling interest, as well as its officers, directors, affiliates, legal representatives, heirs, predecessors, successors, and assigns. Also excluded is any Judge to whom this case is assigned as well as their judicial staff and immediate family members.

113.    Plaintiff reserves the right to modify or amend the definition of the Class, as well as add subclasses, before the Court determines whether certification is appropriate.

114.    Numerosity. The Class Members are so numerous that joinder of all members is impracticable. Though the exact number and identities of Class Members are unknown at this time, based on information and belief, the Class consists of thousands of current and former students of Defendant whose data was compromised in the Data Breach. The identities of Class Members are ascertainable through Defendant's records, Class Members' records, publication notice, self-identification, and other means.

115.    Commonality. There are questions of law and fact common to the Class which predominate over any questions affecting only individual Class Members. These common questions of law and fact include, without limitation:

      a.    Whether Defendant engaged in the conduct alleged herein;

26

b.  Whether Defendant's conduct violated the FTCA and FERPA;

c.  When Defendant learned of the Data Breach

d.  Whether Defendant's response to the Data Breach was adequate;

e.  Whether Defendant unlawfully lost or disclosed Plaintiff's and Class Members' Sensitive Information;

f.  Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the Sensitive Information compromised in the Data Breach;

g.  Whether Defendant's data security systems prior to and during the Data Breach complied with applicable data security laws and regulations;

h.  Whether Defendant's data security systems prior to and during the Data Breach were consistent with industry standards;

i.  Whether Defendant owed a duty to Class Members to safeguard their Sensitive Information;

j.  Whether Defendant breached its duty to Class Members to safeguard their Sensitive Information;

k.  Whether hackers obtained Class Members' Sensitive Information via the Data Breach;

l.  Whether Defendant had a legal duty to provide timely and accurate notice of the Data Breach to Plaintiff and the Class Members;

m.  Whether Defendant breached its duty to provide timely and accurate notice of the Data Breach to Plaintiff and Class Members;

n.  Whether Defendant knew or should have known that its data security systems and monitoring processes were deficient;

o.  What damages Plaintiff and Class Members suffered as a result of Defendant's misconduct;

p.  Whether Defendant's conduct was negligent;

q.  Whether Defendant's conduct was *per se* negligent;

r.  Whether Defendant was unjustly enriched;

s.  Whether Plaintiff and Class Members are entitled to actual and/or statutory damages;

t.  Whether Plaintiff and Class Members are entitled to credit or identity monitoring and monetary relief; and/or

u.  Whether Plaintiff and Class Members are entitled to equitable relief, including injunctive relief, restitution, disgorgement, and/or the establishment of a constructive trust.

116.   Typicality. Plaintiff's claims are typical of those of other Class Members because Plaintiff's Sensitive Information, like that of every other Class Member, was compromised in the Data Breach. Plaintiff's claims are typical of those of the other Class Members because, *inter alia*, all Class Members were injured through the common misconduct of Defendant. Plaintiff is advancing the same claims and legal theories on behalf of herself and all other Class Members, and there are no defenses that are unique to Plaintiff. The claims of Plaintiff and those of Class Members arise from the same operative facts and are based on the same legal theories.

117.  <u>Adequacy of Representation</u>. Plaintiff will fairly and adequately represent and protect the interests of Class Members. Plaintiff's counsel is competent and experienced in litigating class actions, including data privacy litigation of this kind.

118.  <u>Predominance</u>. Defendant has engaged in a common course of conduct toward Plaintiff and Class Members in that all of Plaintiff's and Class Members' data was stored on the same computer systems and unlawfully accessed and exfiltrated in the same way. The common issues arising from Defendant's conduct affecting Class Members set out above predominate over any individualized issues. Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.

119.  <u>Superiority</u>. A Class action is superior to other available methods for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. Class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation. Absent a Class action, most Class Members would likely find that the cost of litigating their individual claims is prohibitively high and would therefore have no effective remedy. The prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class Members, which would establish incompatible standards of conduct for Defendant. In contrast, conducting this action as a class action presents far fewer management difficulties, conserves judicial resources and the parties' resources, and protects the rights of each Class Member.

120.  Defendant has acted and/or refused to act on grounds generally applicable to the Class such that final injunctive relief and/or corresponding declaratory relief is appropriate as to the Class as a whole.

121.    Finally, all members of the proposed Class are readily ascertainable. Defendant has access to the names and addresses and/or email addresses of Class Members affected by the Data Breach.

## VI.    CLAIMS FOR RELIEF

### COUNT I
### NEGLIGENCE
### (On behalf of Plaintiff and the Class)

122.    Plaintiff restates and realleges the allegations stated in paragraphs 1–121 as if fully set forth herein.

123.    Defendant knowingly collected, came into possession of, and maintained Plaintiff's and Class Members' Sensitive Information, and had a duty to exercise reasonable care in safeguarding, securing, and protecting such Information from being disclosed, compromised, lost, stolen, and misused by unauthorized parties.

124.    Defendant's duty also included a responsibility to implement processes by which it could detect and analyze a breach of its security systems quickly and to give prompt notice to those affected in the case of a cyberattack.

125.    Defendant knew or should have known of the risks inherent in collecting the Sensitive Information of Plaintiff and Class Members and the importance of adequate security. Defendant was on notice because, on information and belief, it knew or should have known that it would be an attractive target for cyberattacks.

126.    Defendant owed a duty of care to Plaintiff and Class Members whose Sensitive Information was entrusted to it. Defendant's duties included, but were not limited to, the following:

    a.  To exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting Sensitive Information in its possession;

30

b. To protect students' Sensitive Information using reasonable and adequate security procedures and systems compliant with industry standards;

c. To have procedures in place to prevent the loss or unauthorized dissemination of Sensitive Information in its possession;

d. To employ reasonable security measures and otherwise protect the Sensitive Information of Plaintiff and Class Members pursuant to the FTCA, FERPA, and applicable state laws;

e. To implement processes to quickly detect a data breach and to timely act on warnings about data breaches; and

f. To promptly notify Plaintiff and Class Members of the Data Breach, and to precisely disclose the type(s) of information compromised.

127. Defendant's duty to employ reasonable data security measures arose, in part, under Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, which prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair practice of failing to use reasonable measures to protect confidential data.

128. Defendant's duty also arose because Defendant was bound by industry standards to protect its students' confidential Sensitive Information.

129. Plaintiff and Class Members were foreseeable victims of any inadequate security practices on the part of Defendant, and Defendant owed them a duty of care to not subject them to an unreasonable risk of harm.

130. Defendant, through its actions and/or omissions, unlawfully breached its duty to Plaintiff and Class Members by failing to exercise reasonable care in protecting and safeguarding Plaintiff's and Class Members' Sensitive Information within Defendant's possession.

131. Defendant, by its actions and/or omissions, breached its duty of care by failing to provide, or acting with reckless disregard for, fair, reasonable, or adequate computer systems and data security practices to safeguard the Sensitive Information of Plaintiff and Class Members.

132. Defendant, through its actions and/or omissions, breached its duty of care by failing to promptly identify the Data Breach and then failing to provide prompt notice of the Data Breach to the persons whose Sensitive Information was compromised.

133. Defendant breached its duties, and thus was negligent, by failing to use reasonable measures to protect Class Members' Sensitive Information. The specific negligent acts and omissions committed by Defendant include, but are not limited to, the following:

   a. Failing to adopt, implement, and maintain adequate security measures to safeguard Class Members' Sensitive Information;

   b. Failing to adequately monitor the security of its networks and systems;

   c. Failing to periodically ensure that its email system maintained reasonable data security safeguards;

   d. Allowing unauthorized access to Class Members' Sensitive Information;

   e. Failing to comply with the FTC Act, FERPA, and other applicable laws;

   f. Failing to detect in a timely manner that Class Members' Sensitive Information had been compromised; and

   g. Failing to timely notify Class Members about the Data Breach so that they could take appropriate steps to mitigate the potential for identity theft and other damages.

134. Defendant acted with reckless disregard for the rights of Plaintiff and Class Members by failing to provide prompt and adequate individual notice of the Data Breach such that

Plaintiff and Class Members could take measures to protect themselves from damages caused by the fraudulent use of the Sensitive Information compromised in the Data Breach.

135.   Defendant had a special relationship with Plaintiff and Class Members. Plaintiff's and Class Members' willingness to entrust Defendant with their Sensitive Information was predicated on the understanding that Defendant would take adequate security precautions. Moreover, only Defendant had the ability to protect its systems (and the Sensitive Information that it stored on them) from attack.

136.   Defendant's breach of duties owed to Plaintiff and Class Members caused Plaintiff's and Class Members' Sensitive Information to be compromised and/or exfiltrated as alleged herein.

137.   As a result of Defendant's ongoing failure to notify Plaintiff and Class Members regarding exactly what Sensitive Information has been compromised, Plaintiff and Class Members have been unable to take the necessary precautions to prevent future fraud and mitigate damages.

138.   Defendant's breaches of duty also caused a substantial, imminent risk to Plaintiff and Class Members of identity theft, loss of control over their Sensitive Information, and/or loss of time and money to monitor for fraud.

139.   As a result of Defendant's negligence in breach of its duties owed to Plaintiff and Class Members, Plaintiff and Class Members are in danger of imminent harm in that their Sensitive Information, which is still in the possession of third parties, will be used for fraudulent purposes.

140.   Defendant also had independent duties under state laws that required it to reasonably safeguard Plaintiff's and Class Members' Sensitive Information and promptly notify them about the Data Breach.

141.    As a direct and proximate result of Defendant's negligent conduct, Plaintiff and Class Members have suffered damages as alleged herein and are at imminent risk of further harm.

142.    The injury and harm that Plaintiff and Class Members suffered was reasonably foreseeable.

143.    Plaintiff and Class Members have suffered injury and are entitled to damages in an amount to be proven at trial.

144.    In addition to monetary relief, Plaintiff and Class Members are also entitled to injunctive relief requiring Defendant to, *inter alia*, strengthen its data security systems and monitoring procedures, conduct periodic audits of those systems, and provide lifetime credit monitoring and identity theft insurance to Plaintiff and Class Members.

## COUNT II
## NEGLIGENCE *PER SE*
## (On behalf of Plaintiff and the Class)

145.    Plaintiff restates and realleges the allegations stated in paragraphs 1–121 as if fully set forth herein.

146.    Pursuant to the Federal Trade Commission Act, 15 U.S.C. § 45, Defendant had a duty to provide fair and adequate computer systems and data security practices to safeguard Plaintiff's and Class Members' Sensitive Information.

147.    Defendant breached its duties to Plaintiff and Class Members under the FTCA by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Plaintiff's and Class Members' Sensitive Information.

148.    Defendants' failure to comply with applicable laws and regulations constitutes negligence *per se.*

149.    Plaintiff and Class Members are within the class of persons the FTCA was intended to protect and the harm to Plaintiff and Class Members resulting from the Data Breach was the

34

type of harm against which the FTCA was intended to prevent.

150. But for Defendants' wrongful and negligent breach of their duties owed to Plaintiff and Class Members, Plaintiff and Class Members would not have been injured.

151. The injury and harm suffered by Plaintiff and Class Members was the reasonably foreseeable result of Defendants' breach of their duties. Defendant knew or should have known that by failing to meet its duties, Defendants' breach would cause Plaintiff and Class Members to experience the foreseeable harms associated with the exposure of their Sensitive Information.

152. As a direct and proximate result of Defendants' negligent conduct, Plaintiff and Class Members have suffered injury and are entitled to compensatory, consequential, and punitive damages in an amount to be proven at trial.

**COUNT III**
**BREACH OF IMPLIED CONTRACT**
**<u>(On behalf of Plaintiff and the Class)</u>**

153. Plaintiff restates and realleges the allegations stated in paragraphs 1–121 as if fully set forth herein.

154. Defendant provided education services to Plaintiff and Class Members.

155. Defendant collected and held the Sensitive Information of Plaintiff and Class Members during the ordinary course of business. Holding Plaintiff and Class Members' Sensitive Information was part of Defendant's regular business practices.

156. When Plaintiff and Class Members used Defendant's services, they agreed to have their Sensitive Information stored in Defendant's network.

157. Plaintiff and Class Members entered implied contracts with Defendant in which Defendant agreed to safeguard and protect such Information and to timely detect any breaches of their Sensitive Information. Plaintiff and Class Members were required to share Sensitive Information to obtain services. In entering such implied contracts, Plaintiff and Class Members

35

reasonably believed and expected that Defendant's data security practices complied with relevant laws and regulations and were consistent with industry standards.

158. Plaintiff and Class Members fully performed their obligations under their implied contracts with Defendant.

159. Defendant's implied promises to Plaintiff and Class Members include, but are not limited to: (i) taking steps to ensure that anyone who is granted access to Sensitive Information also protect the confidentiality of that data; (ii) taking steps to ensure that the Sensitive Information that is placed in the control of its employees is restricted and limited to achieve an authorized business purpose; (iii) restricting access to qualified and trained employees and/or agents; (iv) designing and implementing appropriate retention policies to protect the Sensitive Information against criminal data breaches; (v) applying or requiring proper encryption; (vi) implementing multifactor authentication for access; and (vii) taking other steps to protect against foreseeable data breaches.

160. Defendant breached these implied promises it made with Plaintiff and Class Members by failing to safeguard and protect their Sensitive Information and by failing to notify Plaintiff and Class Members thereof within a reasonable time.

161. Plaintiff and Class Members would not have entrusted their Sensitive Information to Defendant in the absence of such an implied contract.

162. Had Defendant disclosed to Plaintiff and the Class that it did not have adequate computer systems and security practices in place to secure such sensitive data, Plaintiff and Class Members would not have provided their Sensitive Information to Defendant.

36

163.    Defendant recognized that Plaintiff's and Class Member's Sensitive Information is highly sensitive and must be protected, and that this protection was of material importance as part of the bargain with Plaintiff and the other Class Members.

164.    Defendant violated these implied contracts by failing to employ reasonable and adequate security measures to secure Plaintiff's and Class Members' Sensitive Information.

165.    Plaintiff and Class Members have been damaged by Defendant's conduct, including the harms and injuries arising from the Data Breach now and in the future, as alleged herein.

166.    Plaintiff and Class Members are also entitled to injunctive relief requiring Defendant to, *inter alia*, (i) strengthen its data security systems and monitoring procedures; (ii) submit to future annual audits of those systems and monitoring procedures; and (iii) immediately provide free lifetime credit monitoring to all Class Members.

## COUNT IV
## UNJUST ENRICHMENT
### (On behalf of Plaintiff and the Class)

167.    Plaintiff restates and realleges the allegations stated in paragraphs 1–121 as if fully set forth herein.

168.    This Count is pleaded in the alternative to Count III above.

169.    Plaintiff and Class Members conferred a benefit on Defendant. Specifically, they provided Defendant with their Sensitive Information, which Sensitive Information has inherent value. In exchange, Plaintiff and Class Members should have been entitled to have Defendant protect their Sensitive Information with adequate data security.

170.    Defendant knew that Plaintiff and Class Members conferred a benefit upon it and had accepted and retained that benefit by accepting and retaining the Sensitive Information

entrusted to it. Defendant profited from Plaintiff's retained data and used Plaintiff and Class Members' Sensitive Information for business purposes.

171.    Defendant failed to secure Plaintiff's and Class Members' Sensitive Information and, therefore, did not fully compensate Plaintiff or Class Members for the value that their Sensitive Information provided.

172.    Defendant acquired the Sensitive Information through inequitable record retention as it failed to disclose the inadequate security practices previously alleged.

173.    If Plaintiff and Class Members had known that Defendant would not use adequate data security practices, procedures, and protocols to secure their Sensitive Information, they would have made alternative financing choices that excluded Defendant.

174.    Plaintiff and Class Members have no adequate remedy at law.

175.    Under the circumstances, it would be unjust for Defendant to be permitted to retain any of the benefits that Plaintiff and Class Members conferred upon it.

176.    As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have suffered and will suffer injury, including but not limited to: (i) the imminent and substantial risk of actual identity theft; (ii) the loss of the opportunity to control how their Sensitive Information is used; (iii) the compromise, publication, and/or theft of their Sensitive Information; (iv) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, and/or unauthorized use of their Sensitive Information; (v) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from identity theft; (vi) the continued risk to their Sensitive Information, which remains in Defendant's possession and is subject to further

38

unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect Sensitive Information in its continued possession; and (vii) future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the Sensitive Information compromised as a result of the Data Breach for the remainder of the lives of Plaintiff and Class Members.

177.    Plaintiff and Class Members are entitled to full refunds, restitution, and/or damages from Defendant and/or an order proportionally disgorging all profits, benefits, and other compensation obtained by Defendant from its wrongful conduct. This can be accomplished by establishing a constructive trust from which the Plaintiff and Class Members may seek restitution or compensation.

178.    Plaintiff and Class Members may not have an adequate remedy at law against Defendant, and accordingly, they plead this claim for unjust enrichment in addition to, or in the alternative to, other claims pleaded herein.

## VII.    PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and the Class described above, seek the following relief:

    a.  An order certifying this action as a Class action, defining the Class as requested herein, appointing the undersigned as Class counsel, and finding that Plaintiff is a proper representative of the Class requested herein;

    b.  Judgment in favor of Plaintiff and Class Members awarding them appropriate monetary relief, including actual damages, statutory damages, equitable relief, restitution, disgorgement, and statutory costs;

c.   An order providing injunctive and other equitable relief as necessary to protect the interests of the Class as requested herein;

d.   An order instructing Defendant to purchase or provide funds for lifetime credit monitoring and identity theft insurance to Plaintiff and Class Members;

e.   An order requiring Defendant to pay the costs involved in notifying Class Members about the judgment and administering the claims process;

f.   A judgment in favor of Plaintiff and Class Members awarding them prejudgment and post-judgment interest, reasonable attorneys' fees, costs, and expenses as allowable by law; and

g.   An award of such other and further relief as this Court may deem just and proper.

## VIII.   <u>DEMAND FOR JURY TRIAL</u>

Plaintiff demands a trial by jury on all triable issues.

Dated: May 8, 2026

MARSHALL OLSON & HULL, PC
BY:    /s/Jason R. Hull
        JASON R. HULL

MSIRI & GLIMSTAD, LLPILBERG, PLLC
        TYLER J. BEAN*
        KENNEDY M. BRIAN*

*Attorneys for Plaintiff and the Proposed Class*

*\* pro hac vice forthcoming*